UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| METRO SERVICES GROUP,<br><br>Plaintiff,<br><br>v.<br><br>NORMA GRANADOS,<br><br>Defendant. | Case No. 13-cv-01201-JCS<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY JUDGMENT, OR IN THE ALTERNATIVE, TO ABSTAIN FROM EXCERSING JURISDICTION**<br><br>**Dkt. No. 10** |

## I.    INTRODUCTION

Plaintiff here, and defendant in the state court action entitled *Granados v. Metro Maintenance, Inc., et al*., CGC 13-529793, Metro Service Group ("Metro") filed this action for Declaratory Judgment and Injunctive Relief under 28 U.S.C. § 2201 on March 18, 2013. Metro seeks declaratory relief stating that its use of the federal E-Verify system and subsequent termination of defendant here and plaintiff in the same state court action, Norma Granados ("Granados"), was consistent with Metro's obligations under the Immigration Reform and Control Act 8 U.S.C. § 1101 *et seq.* ("IRCA"). Dkt. No. 1 (Complaint for Declaratory Judgment and Injunctive Relief) ("Complaint") at 5. Metro also seeks injunctive relief "prohibiting Granados from seeking reinstatement or working for Metro or seeking any damages or other relief in connection with Metro's termination of Granados." *Id.* at 5.

On May 13, 2013, Granados filed a Motion to Dismiss Complaint for Declaratory Judgment, or in the Alternative, to Abstain from Exercising Jurisdiction ("Motion"). Dkt. 10. The Court finds this Motion suitable for determination without oral argument pursuant to Local Rule 7-1(b), and vacates the hearing scheduled for Friday, July 19, 2013 at 9:30 a.m. For the

reasons explained below, Granados' Motion is GRANTED.[1]

## II. BACKGROUND

Metro is a building services company that provides cleaning, engineering, and property consulting services to its clients. Complaint at 2. Granados was hired by Metro on or about September 28, 2012 to work as a janitor. *Id.* Also on or about September 28, 2012, Metro asked Granados to complete an I-9 Form. *Id.* at 3. Metro contends that Granados was unable to meet the requirements for establishing employment authorization under IRCA and applicable rules and regulations. *Id.* According to Metro, after Granados was notified that she would need to take further steps in order to establish employment authorization under IRCA, Granados filed a claim for workers' compensation benefits alleging she was injured while running away from a supervisor who allegedly grabbed her. *Id.* In or around November 2012, Metro terminated Granados' employment for what Metro argues were reasons necessary to comply with IRCA. *Id.* Metro subsequently re-hired Granados in or around January 2013 and again asked her to complete an I-9 Form. *Id.* Metro contends that Granados was considered a new hire at this juncture because Metro had previously terminated Granados' employment with Metro and thus verification of her employment eligibility information was required under IRCA. *Id.* Granados' employment with Metro was later terminated in or around February 2013. *Id.* Metro argues Ms. Granados did not meet employment authorization requirements under IRCA and that the subsequent termination of her employment was once again necessary in order to comply with federal law. *Id.*

Granados' counsel sent pre-litigation demand letters to Metro on January 15, 2013 and January 30, 2013. *See* Dkt. No. 5 (Notice of Errata Regarding Metro Service Group's Complaint) ("Errata") Exs. A and B. The January 15, 2013 letter alleges that Granados was the victim of "pervasive sexual harassment" that gave rise to claims for: 1) hostile work environment; 2) failure to investigate and remedy harassment; 3) failure to prevent harassment; 4) assault; 5) battery; 6) intentional infliction of emotional distress; and 7) negligent hiring and retention. *Id.* at 4. The January 30, 2013 letter, which follows what Metro contends was Granados' re-hiring, alleges that

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

2

1  Metro was engaging in "selective enforcement of employment eligibility verification
2  requirements" in violation of IRCA, Title VII, California's Fair Employment and Housing Act
3  ("FEHA"); and other California anti-retaliatory provisions. *Id.* at 6.
4      Furthermore, according to Metro, Granados' counsel sent an email to Metro on March 12,
5  2013 asking whether Metro's counsel would accept service of a summons and complaint that was
6  to be filed against Metro. *Id*. at 4. Additionally, Metro states that in a telephone conversation that
7  preceded the email, Granados' counsel told counsel for Metro that Granados would be filing a
8  lawsuit against Metro. *Id*. Six days after the email from Granados' counsel to Metro's, on March
9  18, 2013, Metro filed the Complaint in this instant action in the Federal District Court, Northern
10 District of California. *Id*. at 1. Metro alleges in the Complaint that Granados is a citizen of El
11 Salvador residing in San Francisco County and that termination of her employment was required
12 under IRCA. *Id.* at 1-4. On March 21, 2013, three days after the Complaint was filed in this
13 action, Granados filed her complaint in San Francisco Superior Court based on state law claims
14 including harassment, retaliation, discrimination based on sex, wrongful termination and violation
15 of California's Ralph Act. Dkt. No. 10-1 (Declaration of Ramsey Hanafi in Support of Motion to
16 Dismiss Complaint for Declaratory Judgment, or in the Alternative, to Abstain from Exercising
17 Jurisdiction) ("Hanafi Decl.") Ex. A at 1. The claims in Granados' state court complaint mirror
18 the allegations and claims in the pre-litigation letters sent by her counsel to Metro's counsel
19 however, there are no claims for violations of Title VII or IRCA. *Id*.

## III. LEGAL STANDARD

The Declaratory Judgment Act (the "Act"), 28 U.S.C. § 2201(a), confers "unique and substantial discretion" on federal courts in deciding whether to issue a declaratory judgment. *Wilton v. Seven Falls Co.,* 515 U.S. 277, 286 (1995). The statute provides that a court "may declare the rights and other legal relations of any interested party seeking such declaration." § 2201(a). The Act is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Public Serv. Comm'n v. Wycoff Co.,* 344 U.S. 237, 239 (1952). "If a district court, in the sound exercise of its judgment, determines after a complaint is filed that a declaratory judgment will serve no useful purpose, it cannot be incumbent upon the court to

3

proceed to the merits before staying or dismissing the action." *Wilton* at 2143. "Ordinarily, it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties." *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 495 (1942).

## IV. DISCUSSION

In *Brillhart*, the Supreme Court articulated several factors to guide courts in their analysis of whether to exercise jurisdiction over a declaratory judgment action: (1) The district court should avoid needless determination of state law issues; (2) it should discourage litigants from filing declaratory actions as a means of forum shopping; and (3) it should avoid duplicative litigation. *Id.* Furthermore, in affirming that the "*Brillhart* factors remain the philosophical touchstone for district courts," the Ninth Circuit identified several additional factors for consideration. *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). These factors include: (4) whether the declaratory action will settle all aspects of the controversy; (5) whether the declaratory action will serve a useful purpose in clarifying the legal relations at issue; (6) whether the declaratory action is being sought merely for the purposes of procedural fencing or to obtain a "res judicata" advantage; and (7) whether the use of a declaratory action will result in entanglement between the federal and State court systems. *Id.* at n. 5 (quoting *American States Ins. Co. v. Kearns*, 15 F.3d 142, 145 (9th Cir. 1994) (Garth, J., concurring)).

### 1. This Action would Require the Court to Needlessly Decide Issues of State Law

The relief requested in this case cannot be awarded without deciding a host of state law issues. These issues, as well as the significance of federal immigration law in the defense of the state case, are well within the purview of the state courts.

This action seeks a declaration that Plaintiff has complied with IRCA, and an injunction barring Defendant from, *inter alia*, seeking any damages in connection with her termination. Plaintiff essentially seeks a declaration that Defendant has no claim based on her termination and an order that she not pursue the state court action. To decide these issues, the Court would

1 necessarily have to decide issues raised in the state court action. For example, the court would
2 have to decide whether a claim for damages would lie under state law, based on the termination,
3 based on gender discrimination, or based on retaliation. The court would, in that connection, have
4 the opportunity to also address whether the federal immigration laws bar part or all of Defendant's
5 claims. These issues are squarely before the state court in the defendant's action for damages.
6 That court is perfectly capable of deciding those issues.

It is no answer to this argument that federal law may provide a partial or even a full defense to the state law claims. That issue may also be raised in the state court. It makes no sense for this Court to decide all of the state law issues that are raised by Defendant's damages claim in state court simply because federal law may form part of the defense to those claims.

### 2. A Declaration that Plaintiff Complied with IRCA Would Not be Dispositive of All Aspects of the Litigation Between the Parties and Would do Little to Clarify the Legal Relations at Issue.

Metro mischaracterizes the centrality of IRCA in the underlying state proceedings. Metro states that "both the state and federal actions center around whether Metro's termination of Granados was based on her failure to comply with federal immigration law and Metro's obligations under the IRCA." Dkt. No. 14 (Plaintiff Metro Services Group's Opposition to Defendant's Motion to Dismiss Complaint) ("Opposition") at 7. However, Granados' state complaint alleges: (1) harassment in violation of FEHA; (2) retaliation in violation of FEHA; (3) discrimination based on sex in violation of FEHA; (4) wrongful termination in violation of public policy; and (5) violations of California Civil Code § 51.7 (the "Ralph Act"). Hanafi Decl. Ex. A at 1. Granados does not allege that Metro violated IRCA.

While it is true that the federal government has "broad, undoubted power over the subject of immigration and the status of aliens[,]" *Arizona v. United States*, 132 S. Ct. 2492, 2498 (2012), the state court case does not present an issue of immigration law, but rather an issue centering on whether Metro complied with California law. Metro's reliance on *Verizon Communication, Inc. v. Inverizon Int'l, Inc.*, 295 F.3d 870 (8th Cir. 2002) and *Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir. 1996), is thus, misplaced. *Verizon* and *Youell* are inapposite due to the fact that the questions

of federal law in those cases played a central and prominent role. *See Verizon* 74 F.3d at 873 (holding district court's refusal to exercise jurisdiction in declaratory judgment action inappropriate where case centered on trademark infringement and Lanham Act violations); *Youell* 295 F.3d at 376 (holding district court's exercising jurisdiction appropriate where case centered on novel question of maritime law).

In this case, by contrast, the question of whether Metro complied with federal immigration law is not central to the claims. Granados' claims center on violations of FEHA and other California laws. While the wrongful termination and retaliation claims may be related to the issue of Metro's compliance or non-compliance with IRCA, that issue does not speak directly to, nor is it dispositive of, whether Metro violated California law. Thus, a declaration by this Court that Metro complied with IRCA would do little to clarify the legal relations at issue or settle all of the claims. In fact, even if this Court granted declaratory relief stating that Metro complied with IRCA, that declaration could only be offered as evidence of a legitimate non-retaliatory reason in the state proceeding. It would not disprove gender discrimination or harassment. It would not even disprove retaliation. Regardless of what such a declaration's probative value may be, it is certainly not by itself dispositive and Granados would still have the opportunity to rebut it as pretext. *See Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1042 (2005) (describing application of burden shifting framework in FEHA retaliation cases).

In sum, declaratory relief would not be dispositive of all claims and defenses raised in the state court and would serve little purpose in clarifying the legal relations at issue.

**3. The State Court is Better Suited to Decide the Question of Whether Plaintiff's Purported Compliance with Federal Law is a Defense to the State Law Claims.**

As discussed above, Plaintiff can raise its compliance with federal immigration law as a defense to the state court complaint. The state court can decide the issue. Plaintiff does not actually contest this issue. Rather, Plaintiff asserts that it "may" not be able to raise the defense of compliance with federal immigration law because Defendant has cited the California Labor Code. This fear is insufficient to warrant this court exercising jurisdiction in this case, and essentially

1 taking over the function of the state court. The state court has made no ruling that would bar the
2 Plaintiff from raising any of its defenses in the state court.
3 In any event, the face of the statute appears to allow for the interposition of federal
4 immigration laws as a defense. California Labor Code § 1171.5(b) states that:

> For purposes of enforcing state labor and employment laws, a person's immigration status is irrelevant to the issue of liability, and in proceedings or discovery undertaken to enforce those state laws no inquiry shall be permitted into a person's immigration status except where the person seeking to make this inquiry has shown by clear and convincing evidence that the inquiry *is necessary in order to comply with federal immigration law*.

Cal. Labor Code § 1171.5(b)(emphasis added). In addition, to prove retaliation under FEHA, after the plaintiff presents a prima facie case of retaliation, the burden falls upon the employer to present a legitimate, nonretaliatory reason for an adverse employment action. *See Yanowitz* 36 Cal. 4th at 1042 (describing application of burden shifting framework in FEHA retaliation cases). Metro fears that § 1171.5(b) precludes its intended argument that the plaintiff's illegal status and ineligibility to work in the United States was a legitimate, nonretaliatory reason for terminating her employment. There may be an inconsistency between § 1171.5(b) and the employer's right, when defending a FEHA claim, to present a nonretaliatory reason for an adverse employment action. Nevertheless, the apparent inconsistency between the traditional defense to a state law cause of action and a state statute is properly resolved in state court. Moreover, to the extent that the state court were inclined to view this Labor Code as barring a defense based on federal immigration law, the court would have to consider whether the Supremacy Clause would invalidate such a statue. Metro's argument that federal court is the only proper venue to resolve these issues is without merit.

### 4.  Metro engaged in forum shopping through filing the complaint at bar.

The fact that one party may have "won the race to the courthouse by several days does not place it in a preferred position" in deciding whether to exercise jurisdiction in a declaratory judgment action. *Huth v. Hartford Ins. Co. of the Midwest*, 298 F.3d 800, 804 (9th Cir. 2002). Indeed, Ninth Circuit precedent counsels against federal courts exercising jurisdiction where the

action is considered reactionary.  *Dizol* 133 F.3d at 1225 ("federal courts should generally decline to entertain reactive declaratory actions").  Metro contends that it is undisputed that this case was filed before Granados' state court action.  While this is true in a narrow chronological sense, the Court finds its overall significance unpersuasive.  The parties were engaged in pre-litigation discussions prior to the filing of this Complaint, Errata at Exs. A and B, and thus, Metro knew of Granados' claims and that litigation was imminent.  Indeed, Metro states in its Complaint that Granados' counsel contacted Metro's counsel via email to see if he would be willing to accept service of a complaint and summons in an action that was to be filed against Metro.  Complaint at 4.  Additionally, the claims in the demand letter mirror those in Granados' state complaint.  The mere fact that Metro was first to file does not tip the balance of factors in its favor.

## V.    CONCLUSION

For the foregoing reasons, Granados's Motion to Dismiss Complaint for Declaratory Judgment, or in the Alternative, to Abstain from Exercising Jurisdiction is GRANTED.  The case is dismissed.  The clerk is directed to close the file.

IT IS SO ORDERED.

Dated: July 15, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge